**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SALESIAN SOCIETY, PROVINCE OF ST. PHILIP THE APOSTLE, INC., *et al.*,<br><br>        Plaintiff,<br><br>v.<br><br>ALEJANDRO MAYORKAS,[1] *et al.*,<br><br>        Defendants. | Civ. Action No. 18-0477 (EGS) |

**<u>MEMORANDUM OPINION</u>**

Pursuant to the Immigration and Nationality Act ("INA"), special immigrant visas are available each year to qualified ministers of religious denominations that have bona fide religious organizations in the United States. 8 U.S.C. § 1153(b)(4). For a foreign minister to qualify for a special immigrant visa under the INA, he or she must be seeking to enter the United States solely for the purpose of carrying on the vocation of a minister, and must have been carrying on that vocation for at least the two years before the time he or she applied for the visa. 8 U.S.C. § 1101(a)(27)(C). The INA also

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes as defendants Secretary of Homeland Security Alejandro Mayorkas for former Secretary Kirstjen M. Nielsen and Senior Official Performing the Duties of Director of the U.S. Citizenship and Immigration Services Tracy Renaud for former Director L. Francis Cissna.

makes up to 5,000 special immigrant visas available each year to non-minister religious workers who seek to work in religious vocations or occupations for a religious organization in the United States and who have been carrying on that work for at least the two years before the time they applied for the visa. 8 U.S.C. § 1153(b)(4); 8 U.S.C. § 1101(a)(27)(C)(ii)(II)-(III). As required by the INA, U.S. Citizenship and Immigration Services ("USCIS") has issued regulations that elaborate on the qualifications required by statute that an immigrant seeking a special immigrant religious worker visa must demonstrate. 8 U.S.C. § 1103(a)(3); 8 C.F.R. § 204.5(m).

At issue in this action are provisions of USCIS's regulations that require ministers and other religious workers, or the religious organizations filing on their behalf, to submit evidence with their special immigrant religious worker visa petitions that shows: (1) they will be working in a "compensated position" when they enter the United States, which "may include salaried or non-salaried compensation"; and (2) they received salaried or non-salaried compensation for the religious work they performed in the two years before filing their petition, or they received no salary during that time but provided for their own support. 8 C.F.R. § 204.5(m)(2), (10), (11).

Plaintiffs—Salesian Society, Province of St. Philip the Apostle, Inc. ("Salesian Society"); Brother Eduardo Alberto

Chincha Leon ("Brother Eduardo"), Brother Juan-Pablo Rubio-Olivares ("Brother Rubio"), and Brother Sasika Nalaka Lokuhettige ("Brother Sasika")—challenge these regulations as well as the denial of the Brothers' visa petitions based, among other things, on the challenged regulations. As Plaintiffs allege in their Complaint, "[t]he gravamen of the Plaintiffs' claim is that the Defendants have illegally imposed a requirement that the Plaintiffs must prove financial compensation despite the fact that, as is the case with all professed Salesians, Brother Eduardo, Brother Sasika and Brother Rubio, have taken a vow of poverty consistent with the Salesian Society's long-standing basic religious tenants." Am. Comp., ECF 41 ¶ 1. Plaintiffs claim 8 C.F.R. § 204.5(m)(2) and (m)(11) violate: (1) the Administrative Procedures Act ("APA") because they "impose restrictions not contemplated by the [INA] and that directly contradict the INA," making them *ultra vires*, arbitrary, capricious, and not in accordance with the law; (2) the Free Exercise and Establishment Clauses of the First Amendment because they discriminate against religious organizations whose ministers have taken a vow of poverty and inhibit the interests of those religious organizations while preferencing others; and (3) the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*, because, for ministers who have taken a vow of poverty and for their religious

organizations, they substantially burden the exercise of religion.[2]

Defendants disagree with Plaintiffs' characterization of the challenged regulations, stating that ministers and other religious workers who have taken a vow of poverty can satisfy the requirements by providing satisfactory evidence of their religious organization's direct or indirect financial support, which could take the form of payment for housing, food, or tuition for religious studies, among other things, or by providing evidence of the religious worker's self-support in the absence of compensation. When interpreted correctly, Defendants argue, these regulations are not in conflict with the INA. Rather, the regulations establish the type and quantum of evidence necessary to satisfy the INA's requirements that special immigrant religious workers be coming to the United States "solely for the purpose of carrying on the vocation of minister" or "to work" in a professional or non-professional capacity "in a religious vocation" and that they have been carrying on those vocations for at least two years before applying. To ensure a special immigrant religious worker meets

---

[2] Plaintiffs also alleged equal protection and due process claims under the Fifth and Fourteenth Amendments to the United States Constitution. Am. Compl., ECF No. 41 ¶ 109. Plaintiffs did not move for summary judgment on those claims. *See generally* Pls.' Mot., ECF No. 42-3. Accordingly, Plaintiffs have waived those claims.

those qualifications, and to adhere to Congress' directive to reduce fraud in this particular visa program, Defendants argue that regulations requiring evidence that the petitioner receives a salary or indirect financial support are a permissible construction of the statute. Defendants also maintain that because the regulations as written already accommodate the Salesian Brothers and other religious workers who have professed a vow of poverty—and in this case, Plaintiffs have simply failed to submit any of the acceptable forms of evidence—the challenged regulations do not violate the First Amendment or RFRA.

Pending before the Court are Plaintiffs' April 10, 2019 Motion for Summary Judgment, ECF No. 42; and Defendants' May 1, 2019 Cross-Motion for Summary Judgment, ECF No. 43.[3] On September 18, 2018, the Court informed the parties that Plaintiffs' motions for injunctive relief would be consolidated with the merits pursuant to Federal Rule of Civil Procedure 65(a)(2). Min. Order (Sept. 18, 2018). The parties agree that the Court has before it all relevant evidence in the case.[4] Upon

---

[3] Defendants' April 20, 2018 Motion to Dismiss, ECF No. 14; and Plaintiffs' November 16, 2018 Motion for Summary Judgment, ECF No. 27; are **MOOT** in light of Plaintiffs' Amended Complaint, ECF No. 41. Plaintiffs' August 15, 2018 Motion for Temporary Restraining Order, ECF No. 20, is also **MOOT** in light of USCIS's adjudication of the Brothers' visa petitions that were the subject of that motion.

[4] Federal Rule of Civil Procedure 65(a)(2) permits the Court to, "[b]efore or after beginning [a] hearing on a motion for a

consideration of the parties' submissions, the applicable law, and the entire record herein, the Court **DENIES** Plaintiffs' Motion for Summary Judgment; and **GRANTS** Defendants' Cross-Motion for Summary Judgment.[5]

## I. Background

### A. The Immigration and Nationality Act

The INA governs the issuance of visas to foreign nationals seeking to enter the United States, and broadly speaking, it provides for two categories of visa applicants: "'nonimmigrants,' who plan to stay in the country only temporarily, and 'immigrants, who plan to stay permanently." *Save Jobs USA v. Dep't of Homeland Sec.*, 942 F.3d 504, 506 (D.C. Cir. 2019) (citing 8 U.S.C. § 1184(b) ("Every alien ... shall be presumed to be an immigrant until he establishes ... that he is entitled to a nonimmigrant status."); and citing 8 U.S.C. § 1101(a)(15) (setting forth nonimmigrant classifications)).

---

preliminary injunction, . . . advance the trial on the merits and consolidate it with the hearing." Fed. R. Civ. P. 65(a)(2). A decision on the merits is appropriate where, as here, "the record is sufficient for a determination on the merits under the summary judgment standard." *See March for Life v. Burwell*, 128 F. Supp. 3d 116, 124 (D.D.C. 2015). Both parties contend that the record is sufficient for a determination on the merits here, and the Court agrees.

[5] Plaintiffs' March 15, 2018 Motion for Preliminary Injunction, ECF No. 6, is also **DENIED** in view of this Memorandum Opinion and Order.

With respect to the allocation of immigrant visas, the INA provides preference for "employment-based immigrants" who fall within five categories of workers: (1) priority workers, including those with extraordinary ability in the sciences, arts, education, business or athletics, outstanding professors and researchers, and certain multinational executives and managers; (2) those with advanced degrees or of exceptional ability in certain professions; (3) skilled workers and professionals; (4) "special immigrants," and (5) foreign investors. *See* 8 U.S.C. § 1153(b)(1)-(5). As relevant here, the INA defines "special immigrants" to include ministers and other religious workers. *See* 8 U.S.C. § 1101(a)(27)(C).

> The term "special immigrant" means—
> . . .
> (C) an immigrant . . . who—
>
> > (i) for at least 2 years immediately preceding the time of application for admission, has been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States;
> >
> > (ii) seeks to enter the United States—
> >
> > > (I) solely for the purpose of carrying on the vocation of a minister of that religious denomination,
> > > (II) before September 30, 2021, in order to work for the organization at the request of the organization in a professional capacity in a

> > > religious        vocation        or
> > > occupation, or
> >
> > (III)   before September 30, 2021,
> >         in order to work for the
> >         organization (or for a bona
> >         fide organization which is
> >         affiliated       with       the
> >         religious denomination and
> >         is exempt from taxation as
> >         an organization described in
> >         section  501(c)(3)  of  title
> >         26)  at  the  request  of  the
> >         organization  in  a  religious
> >         vocation or occupation; and
>
> (iii) has been carrying on such vocation,
> professional   work,   or   other   work
> continuously   for   at   least   the   2-year
> period described in clause (i)[.]

8 U.S.C. § 1101(a)(27)(C)(i)-(iii).

In short, the INA makes visas available for qualified
ministers and other religious workers to immigrate in legal
status to the United States to perform religious work. *See*
*Shalom Pentecostal Church v. Acting Sec'y U.S. Dep't of Homeland*
*Sec.*, 783 F.3d 156, 159 (3d Cir. 2015). To obtain a special
immigrant religious worker visa, a minister or other religious
worker, or their employer, must file an I-360 petition, *see* 8
U.S.C. § 1154(a)(1)(G)(i); and if USCIS approves the petition,
the religious worker can either apply for a visa from abroad, or
for adjustment of their status to a lawful permanent resident if
he or she is already in the United States, 8 U.S.C. §
1153(b)(4). Up to 5000 such visas are available each year. 8
U.S.C. § 1153(b)(4).

**B. USCIS's Implementing Regulations**

Under the current USCIS regulations pertaining to special immigrant religious workers, an I-360 petition for a minister or non-minister religious worker seeking such classification must:

> (1)  For at least two years immediately preceding the filing of the petition have been a member of a religious denomination that has a bona fide non-profit religious organization in the United States.
>
> (2)  Be coming to the United States to work in a full time (average of at least 35 hours per week) compensated position . . .
>
> > (i)   Solely in the vocation of a minister of that religious denomination;
> > (ii)  A religious vocation either in a professional or nonprofessional capacity; or
> > (iii) A religious occupation either in a professional or nonprofessional capacity.
>
> (3)  Be coming to work for a bona fide non-profit religious organization in the United States, or a bona fide organization which is affiliated with the religious denomination in the United States.
>
> (4)  Have been working in one of the positions described in paragraph (m)(2) of this section, either abroad or in lawful immigration status in the United States, and after the age of 14 years continuously for at least the two-year period immediately preceding the filing of the petition. The prior religious work need not correspond precisely to the type of work to be performed. A break in the

9

>
> continuity of the work during the
> preceding two years will not affect
> eligibility so long as:
>
> (i)     The alien is still employed as a
>         religious worker;
> (ii)    The break did not exceed two
>         years; and
> (iii)   The nature of the break was for
>         further religious training or for
>         sabbatical that did not involve
>         unauthorized work in the United
>         States. However, the alien must
>         have been a member of the
>         petitioner's denomination
>         throughout the two years of
>         qualifying employment.

8 C.F.R. § 204.5(m)(1)-(4).

As relevant here, the regulations also establish evidentiary standards petitioners must meet to prove future compensation and prior employment. *See id.* § 204.5(m)(8)-(11). Subsection 204.5(m)(10) identifies the evidence USCIS requires from petitioners to prove future compensation, and § 204.5(m)(11) identifies the evidence USCIS requires from petitioners to prove past compensation. Regarding future compensation, a petitioner must include initial evidence of how the religious organization employer intends to compensate the minister, which "may include[] salaried and non-salaried compensation." *Id.* § 204.5(m)(10). "This evidence may include past evidence of compensation for similar positions; budgets showing monies set aside for salaries, leases, etc.; verifiable documentation that room and board will be provided; or other

10

evidence acceptable to USCIS." *Id.* IRS documentation is

required, though if such evidence is not available the religious

organization may provide an explanation for its absence along

with comparable, verifiable documentation. *Id.* Regarding past

compensation, the regulations provide as follows:

> If the alien was employed in the United States
> during the two years immediately preceding the
> filing of the application and:
>
> (i)   Received salaried compensation, the
>       petitioner must submit IRS
>       documentation that the alien received
>       a salary, such as an IRS Form W-2 or
>       certified copies of income tax
>       returns.
>
> (ii)  Received non-salaried compensation,
>       the petitioner must submit IRS
>       documentation of the non-salaried
>       compensation if available.
>
> (iii) Received no salary but provided for
>       his or her own support, and provided
>       support for any dependents, the
>       petitioner must show how support was
>       maintained by submitting with the
>       petition additional documents such as
>       audited financial statements,
>       financial institution records,
>       brokerage account statements, trust
>       documents signed by an attorney, or
>       other verifiable evidence acceptable
>       to USCIS.
>
> If the alien was employed outside the United
> States during such two years, the petitioner
> must submit comparable evidence of the
> religious work.

*Id*. § 204.5(11).

In this action, Plaintiffs argue that 8 CFR §§ 204.5(m)(2) and
(11) violate the APA, the First Amendment, and RFRA; and they
challenge USCIS's denial of the Brothers' petitions based on
Plaintiffs' failure to meet the requirements set forth in those
regulations. *See* Pl.'s Mot., ECF No. 42-3 at 9-10.[6]

### C. Factual Background

Brothers Eduardo, Rubio, and Sasika are members of the
Salesian Society, which is an international Roman Catholic
Religious Order with more than 15,000 priests, brothers,
deacons, and novices in more than 130 countries, including the
United States. Pls.' Statement of Facts ("Pls.' SMF"), ECF No.
42-2 ¶¶ 1, 2; Defs.' Resp. to Pls.' SMF ("Defs.' Resp. SMF"),
ECF No. 43-2 ¶¶ 1, 2. Brothers Eduardo, Rubio, and Sasika have
each taken a vow of poverty, which is a vow that the Salesian
Society requires of all of its priests and brothers, prohibiting
them from "personal monetary, financial, material or other
compensation of any kind." Pls.' SMF, ECF No. 42-2 ¶ 15, 16, 22,
36; Defs.' Resp. SMF, ECF No. 43-2 ¶ 15, 16, 22, 36.

The Salesian Society filed I-360 petitions with USCIS for
Brothers Eduardo, Rubio, and Sasika to receive special immigrant
religious worker classifications so they could obtain legal

---

[6] When citing electronic filings throughout this Opinion, the
Court cites to the ECF page number, not the page number of the
filed document.

permanent immigrant status to perform religious work in the
United States.[7] Members of the Salesian Society often transfer
between communities as needed to fulfill the Order's religious
mission. Pls.' SMF, ECF No. 42-2 ¶ 4; Defs.' Resp. SMF, ECF No.
43-2 SMF ¶ 4. Based on religious, cultural, and linguistic
abilities, the Salesian Society transfers members domestically
and/or internationally so that they may contribute to different
communities and gain experience serving in various parts of the
world. Pls.' SMF, ECF No. 42-2 ¶ 5; Defs.' Resp. SMF, ECF No.
43-2 ¶ 5. In response to the I-360 petitions, USCIS denied all
three as described below.

### 1. First Denial of Brother Eduardo's I-360 Petition

The Salesian Society filed an I-360 Petition for Brother
Eduardo on May 2, 2016. Pls.' SMF, ECF No. 42-2 ¶ 6; Defs.'
Resp. SMF, ECF No. 43-2 ¶ 6; Defs.' Statement of Facts ("Defs.'
SMF"), ECF No. 44-1 ¶ 1; Pls.' Resp. to Defs.' SMF ("Pls.' Resp.
SMF"), ECF No. 45-1 ¶ 1; Eduardo AR at 96-108, 136-209. Brother

---

[7] The parties filed a joint appendix that contains copies of the
portions of the Administrative Record ("AR") that are cited or
otherwise relied upon by the parties in their summary judgment
briefing. *See* Joint Appendix, ECF No. 49. The joint appendix
contains three parts: (1) the administrative record relating to
Brother Eduardo's I-360 petition ("Eduardo AR"), ECF No. 49-1;
(2) the administrative record relating to Brother Rubio's I-360
petition ("Rubio AR"), ECF No. 49-2; and (3) the administrative
record relating to Brother Sasika's I-360 petition ("Sasika
AR"), ECF No. 49-3. All citations in this Memorandum Opinion are
to the administrative record page numbers.

Eduardo is a Peruvian citizen who became a Salesian Brother in 2011. Pls.' SMF, ECF No. 42-2 ¶ 26; Defs.' Resp. SMF, ECF No. 43-2 ¶ 26.

On March 9, 2017, USCIS issued a Request for Evidence ("RFE") in response to Brother Eduardo's Petition. Pls.' SMF, ECF No. 42-2 ¶ 7; Defs.' Resp. SMF, ECF No. 43-2 ¶ 7; Defs.' SMF, ECF No. 44-1 ¶ 2; Pls.' Resp. SMF, ECF No. 45-1 ¶ 2; Eduardo AR at 129-33. USCIS sought: (1) evidence pertaining to Brother Eduardo's compensation;[8] (2) evidence pertaining to his minister position;[9] and (3) information about Brother Eduardo and

---

[8] Specifically, USCIS's letter directed the Salesian Society and Brother Eduardo to "[d]escribe the complete package of compensation being offered." Eduardo AR at 132. "IRS documentation, such as IRS Form W-2 or certified tax returns, if available. If IRS documentation is unavailable, submit an explanation for the absence of IRS documentation, along with comparable, verifiable documentation." *Id*.

[9] USCIS directed the Salesian Society and Brother Eduardo to submit: (1) "a copy of the alien's certification of ordination or similar documents reflecting acceptance of the alien's qualifications as a minister in the religious denomination;" and (2) "documents reflecting acceptance of the alien's qualifications as a minister in the religious denomination, as well as evidence that the alien has completed any course of prescribed theological education at an accredited theological institution normally required or recognized by that religious denomination, including transcripts, curriculum, and documentation that establishes that the theological institution is accredited by the denomination." Eduardo AR at 132. Alternatively, USCIS directed that for denominations that do not require a prescribed theological education, petitioners submit evidence of: (1) "The denomination's requirements for ordination to minister;" (2) "The duties allowed to be performed by virtue of ordination;" (3) The denomination's levels of ordination, if

his work history.[10] Defs.' SMF, ECF No. 44-1 ¶ 2; Pls.' Resp.

SMF, ECF No. 45-1 ¶ 2; Eduardo AR at 129-33. By June 1, 2017,

the Salesian Society filed a response to that RFE that consisted

of a letter authored by Reverend Timothy Zak, the Acting

Provincial of the Salesian Society, as well as three documentary

exhibits related to Brother Eduardo's minister position and

religious work. Pls.' SMF, ECF No. 42-2 ¶ 8; Defs.' Resp. SMF,

---

any;" and (4) "The alien's completion of the denomination's
requirements for ordination." *Id.*
[10] USCIS advised that the Salesian Society and Brother Eduardo
could submit the following evidence to show that Brother Eduardo
had been working continuously for at least two years before the
filing of the petition: (1) "Experience letters written by
authorized representatives of previous and current employers
with direct personal knowledge of the work experience that
include a breakdown of duties performed in the religious
position for an average week"; and, (2) for petitioners employed
outside the United States during the two-year period, evidence
of the religious work comparable to, *for those who received
salaried compensation*, "IRS documentation that the alien
received a salary, such as an IRS Form W-2 or certified copies
of income tax returns," *for those who received non-salaried
compensation*, "IRS documentation of the non-salaried
compensation if available," or *for those who received no salary
but provided for his or her own support*, "additional documents
such as audited financial statements, financial institution
records, brokerage account statements, trust documents signed by
an attorney, or other verifiable evidence acceptable to USCIS."
Eduardo AR at 132. USCIS further provided that "[i]f required
evidence of compensation does not exist or cannot be obtained,"
the Salesian Society and Brother Eduardo must "demonstrate this
and submit secondary evidence," or "[i]f secondary evidence does
not exist or cannot be obtained," they must "demonstrate the
unavailability of both the required evidence and relevant
secondary evidence, and submit two or more affidavits, sworn to
or affirmed by persons who are not parties to the petition who
have direct personal knowledge of the compensation." *Id.* 133.

ECF No. 43-2 ¶ 8; Defs.' SMF, ECF No. 44-1 ¶ 3; Pls.' Resp. SMF, ECF No. 45-1 ¶ 3; Eduardo AR at 109-28.

With respect to compensation, Reverend Zak stated that Brother Eduardo "has relinquished all worldly goods as part of his vow of poverty." Eduardo AR at 113. "As is the case with all Salesian brothers, all of Br[other] Eduardo's needs are met by the Salesian community, including all his needs for housing, food, clothing travel, medical care, etc." *Id.* Reverend Zak went on to explain:

> In addition, the Salesian community pays for all of Br[other] Eduardo's educational expenses. As part of his religious vocation and formation for the priesthood, he is currently studying at Immaculate Conception School of Theology at Seton Hall University where he is pursuing a Master's Degree in Theology. All of the expenses associated with Br[other] Eduardo's enrollment at Seton Hall are paid for by the Salesian Community. These include:
> - Annual tuition of $21,194
> - Room, board, and personal expenses of $1,500 per month ($18,000 per year)
> - Health insurance of $2,573 per year
>
> This total amount of $41,767 each year is paid wholly by the Salesian Order on Br[other] Eduardo's behalf.

Eduardo AR at 113-14. Reverend Zak further explained that "while teaching at the Salesian High School in New Rochelle, New York, [Brother Eduardo] received no salary or compensation. The school made a lump sum payment for the teaching activities of all the Salesians. This payment was sent directly to the Salesian

16

community, which would then use it for community needs such as food, housing expenses, health care, and travel." Eduardo AR at 114.

On June 28, 2017, USCIS denied Brother Eduardo's I-360 Petition. Pls.' SMF, ECF No. 42-2 ¶ 10; Defs.' Resp. SMF, ECF No. 43-2 ¶ 10; Defs.' SMF, ECF No. 44-1 ¶ 4; Pls.' Resp. SMF, ECF No. 45-1 ¶ 4; Eduardo AR at 87-95. Citing 8 C.F.R. § 204.5(m)(11), the June 28, 2017 denial letter stated that "[t]he issue is whether you submitted required evidence of compensation for the beneficiary's past work." Eduardo AR at 89. USCIS concluded that the evidence required by the regulations "was not found." Eduardo AR at 90. USCIS characterized Reverend Zak's letter as "appear[ing] to describe [Brother Eduardo's] past compensation as including monetary compensation of $18,000 per year, annual tuition of $21,194, room and board, and health insurance of $2,573." *Id.* "However, IRS documentation or secondary evidence of this compensation was not found, nor a demonstration that such evidence is unavailable." *Id.* USCIS stated that Reverend Zak's letter, "although providing necessary context," "does not appear to satisfy the tertiary evidence requirements of the regulation at 8 C.F.R. § 103.2(b)(2)(i)" because it was "from a representative of your organization" and "you are a party to the petition." *Id.* USCIS continued, "simply going on record with unsupported statements without supporting

17

documentary evidence does not satisfy the burden of proof in these proceedings." *Id.* (citing *Matter of Soffici*, 22 I&N Dec. 158, 165 (Comm. 1998) (citing *Matter of Treasure Craft of California*, 14 I&N Dec. 190 (Reg. Comm. 1972))).

Following this denial, the Salesian Society filed an I-290B form, appealing the USCIS's June 28, 2017 decision. Pls.' SMF, ECF No. 42-2 ¶ 12; Defs.' Resp. SMF, ECF No. 43-2 ¶ 12; Defs.' SMF, ECF No. 44-1 ¶ 6; Pls.' Resp. SMF, ECF No. 45-1 ¶ 6; Eduardo AR at 30-86. The Salesian Society argued that "[n]o compensation or salary is required, provided, or allowed to Salesian Brothers, all of whom have taken lifelong vows of poverty." Eduardo AR at 41. "[T]he statute and regulations," the Salesian Society argued, "do not require, 'compensation;' rather, they require that the Beneficiary, 'has been carrying on such vocation.'" *Id.* The Salesian Society contended that they "have fully documented the fact that the Beneficiary has been carrying on his religious vocation on a full-time basis since August 16, 2011." *Id.* 43. The Salesian Society also presented new evidence of its "financial ability to support Brother Eduardo." *Id.* 43-44. That evidence included documentary evidence of the Salesian Society's net assets and its tax-exempt status. *Id.*

USCIS denied the Salesian Society's appeal on September 14, 2017. Pls.' SMF, ECF No. 42-2 ¶ 13; Defs.' Resp. SMF, ECF No.

43-2 ¶ 13; Defs.' SMF, ECF No. 44-1 ¶ 8; Pls.' Resp. SMF, ECF
No. 45-1 ¶ 8; Eduardo AR at 27-29. USCIS stated that "[t]he
petition was denied because you did not submit evidence of past
employment," and the Salesian Society's representation that "No
compensation . . . is required, provided, or allowed" would
"provide an independent ground for denial [because] [t]he
regulation at 8 C.F.R. § 204.5(m)(2) explicitly requires that
the alien be coming to work in a 'compensated position.'"
Eduardo AR at 27. USCIS also stated that "whether you directly
provided the beneficiary monetary compensation or whether you
provided him non-salaried compensation for which you paid, you
must submit supporting documentation of this that complies with
the evidentiary requirements set forth in the regulation."
Eduardo AR at 28. Finally, USCIS stated that the evidence of the
Salesian Society's financial ability to support Brother Eduardo
was insufficient to satisfy the evidentiary requirements because
it did not demonstrate that the Salesian Society paid non-
salaried compensation such as room, board, and personal expenses
or health insurance as the Salesian Society represented it had.
Eduardo AR at 28.

After USCIS denied the appeal, the Salesian Society
initiated this suit on February 28, 2018. *See* Compl., ECF No. 1.

### 2. Final Denial of Brother Eduardo's I-360 Petition

After the Salesian Society initiated this suit, USCIS reopened Brother Eduardo's I-360 petition on March 22, 2018. Defs.' SMF, ECF No. 44-1 ¶ 11; Pls.' Resp. SMF, ECF No. 45-1 ¶ 11; Eduardo AR at 20-26. USCIS issued a new RFE that day for Brother Eduardo's petition, requesting more evidence from the Salesian Society than it had in the first RFE. USCIS asked for evidence to support the Salesian Society's representations that Brother Eduardo professed his vows in 2011, taught Religion and History at the Salesian High School, pursued his master's degree in Theology at the Jerusalem Campus in Israel, and was at that time studying at Seton Hall University. Eduardo AR at 23. USCIS again sought evidence demonstrating the Salesian Society paid for all of Brother Eduardo's expenses, and USICS detailed the acceptable evidence of this "non-salaried compensation." Eduardo AR at 23-24.[11] USCIS also sought evidence showing Brother Eduardo would be working as a minister, and USCIS again detailed the

---

[11] Such acceptable evidence includes but is not limited to: verifiable evidence of financial support, including stipends/allowances and room and board; evidence of medical insurance coverage in the form of insurance cards or insurance payments; documentation of stipends provided in the form of processed checks or paystubs; or "other evidence acceptable to USCIS." Eduardo AR at 23-24.

acceptable evidence to support a "minister" classification. Eduardo AR at 24.[12]

The Salesian Society never responded to the second RFE for Brother Eduardo's I-360 petition. Defs.' SMF, ECF No. 44-1 ¶ 17; Pls.' Resp. SMF, ECF No. 45-1 ¶ 17; Eduardo AR at 3. USCIS accordingly issued a final decision on Brother Eduardo's I-360 petition on February 4, 2019, denying the petition for abandonment pursuant to 8 C.F.R § 103.2(b)(13)(i). Defs.' SMF, ECF No. 44-1 ¶ 18; Pls.' Resp. SMF, ECF No. 45-1 ¶ 18; Eduardo AR at 2-10. USCIS further noted the following deficiencies with Brother Eduardo's petition: (1) it failed to establish Brother Eduardo had been continuously employed as a religious worker for at least the two year period immediately preceding the filing of the petition; (2) it failed to show that Brother Eduardo had received non-salaried compensation as the Salesian Society claims; and (3) it failed to establish that Brother Eduardo is qualified as a "minister" and would engage in that position in the United States. *See id.*

---

[12] Such acceptable evidence includes but is not limited to: a copy of Brother Eduardo's certificate of ordination; evidence Brother Eduardo had completed any courses or education normally required or recognized by the Salesian Society, including transcripts, curriculum, or other documentation establishing accreditation; or other evidence of the Salesian Society's requirements for ordination, duties allowed to be performed, levels of ordination, and Brother Eduardo's completion of the Salesian Society's requirements. Eduardo AR at 24.

### 3. Denial of Brother Rubio's and Brother Sasika's I-360 Petitions

Following the initiation of this lawsuit, the Salesian Society also filed I-360 petitions on behalf of Brother Rubio and Brother Sasika. Defs.' SMF, ECF No. 44-1 ¶ 24, 29; Pls.' Resp. SMF, ECF No. 45-1 ¶ 24, 29; Rubio AR at 20-119; Sasika AR at 19-144.

On July 30, 2018, USCIS issued a RFE for Brother Rubio's Petition; and on October 9, 2018, USCIS issued a RFE for Brother Sasika's Petition. Pls.' SMF, ECF No. 42-2 ¶ 34; Defs.' Resp. SMF, ECF No. 43-2 ¶ 34; Defs.' SMF, ECF No. 44-1 ¶ 25, 30; Pls.' Resp. SMF, ECF No. 45-1 ¶ 25, 30; Rubio AR at 14-19; Sasika AR at 12-15. In both RFEs, USCIS requested evidence showing the brothers had worked continuously for at least the two-year period immediately preceding the filing of the petitions, and USCIS also requested evidence of salaried or non-salaried compensation for the brothers. Pls.' SMF, ECF No. 42-2 ¶ 35; Defs.' Resp. SMF, ECF No. 43-2 ¶ 35; Defs.' SMF, ECF No. 44-1 ¶ 26, 31; Pls.' Resp. SMF, ECF No. 45-1 ¶ 26, 31; Rubio AR at 18-19; Sasika AR at 14.

The Salesian Society did not respond to either RFE. USCIS therefore issued final decisions denying Brother Rubio's and Brother Sasika's petitions on February 13, 2019. Defs.' SMF, ECF No. 44-1 ¶ 27, 32; Pls.' Resp. SMF, ECF No. 45-1 ¶ 27, 32; Rubio

AR at 2-7; Sasika AR at 2-6. USCIS denied the petitions based on abandonment and evidentiary deficiencies, specifically a failure to demonstrate that the brothers worked previously as religious workers and that the Salesian Society had provided them with non-salaried compensation. Defs.' SMF, ECF No. 44-1 ¶ 27, 28, 32, 33; Pls.' Resp. SMF, ECF No. 45-1 ¶ 27, 28, 32, 33; Rubio AR at 2-7; Sasika AR at 2-6.

### D. Procedural Background

Plaintiffs filed their Motion for Summary Judgment on April 10, 2019, *see* ECF No. 42; and Defendants filed their Cross-Motion for Summary Judgment on May 1, 2019, *see* ECF No. 43. The parties filed responses and replies and briefing on the motions was complete by May 31, 2019. The parties subsequently filed their Joint Appendix on August 13, 2019. ECF No. 49. Thereafter, on January 14, 2021, the Court granted Plaintiffs' request for leave to file a supplemental memorandum, *see* Min. Order (Jan. 14, 2021); and briefing on Plaintiffs' supplemental memorandum was complete on February 26, 2021. The motions are now ripe for the Court's adjudication.

## II. Legal Standard

Summary judgement is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When plaintiffs invoke the APA to seek review of an agency's

23

decision, they typically present a pure question of law, and summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Las Ams. Immigration Advoc. Ctr. v. Wolf*, 507 F. Supp. 3d 1, 17 (D.D.C. 2020) (citing *Wilhelmus v. Geren*, 796 F. Supp. 2d 157, 160 (D.D.C. 2011)). The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992). Under the APA, courts must set aside agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights; [or] (D) without observance of procedure required by law." 5 U.S.C. § 706(2)(A)-(D). Under the APA's "narrow" standard of review, "a court is not to substitute its judgment for that of the agency," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); and "will defer to the [agency's] interpretation of what [a statute] requires so long as it is 'rational and supported by the record,'" *Oceana, Inc. v. Ross*, 454 F. Supp. 3d 62, 68 (D.D.C. 2020).

When plaintiffs challenge an agency's decision on constitutional grounds, however, "a court does not defer to the agency's pronouncement on constitutional issues." *NYC C.L.A.S.H., Inc. v. Carson*, 442 F. Supp. 3d 200, 209 (D.D.C. 2020). Instead, "a court's review of 'constitutional challenges to agency actions . . . is *de novo*.'" *Poett v. United States*, 657 F. Supp. 2d 230, 241 (D.D.C. 2009) (quoting *Cullman Reg'l Med. Ctr. v. Shalala*, 945 F. Supp. 287, 293 (D.D.C. 1996)). The Court must make "an independent assessment of a citizen's claim of constitutional right when reviewing agency decision-making," and such "[i]ndependent judicial judgment is especially appropriate in the First Amendment area." *Id.* (quoting *Lead Indus. Ass'n v. Envtl. Prot. Agency*, 647 F.2d 1130, 1173-74 (D.C. Cir. 1980); *Porter v. Califano*, 592 F.2d 770, 780 (5th Cir. 1979)).

## III. Analysis

For the reasons explained more fully below, the Court concludes that the challenged regulations are not in conflict with the INA and instead reflect USCIS's permissible construction of the statute. And, because the regulations expressly permit petitioners, including the Salesian Brothers, to provide evidence of non-salaried compensation, that is, direct or indirect financial support such as payment for room

and board, tuition, or other living expenses, the challenged

regulations do not violate the First Amendment or RFRA.

## A. The Challenged Regulations Do Not Violate The APA, Nor Do USCIS's Denials of the Brothers' Visa Petitions Violate The APA.

Plaintiffs first contend that Defendants exceeded their

statutory authority under the INA in promulgating the challenged

regulations requiring a special immigrant religious worker visa

petitioner to work in a "compensated position." Plaintiffs argue

these regulations "impose restrictions not contemplated by the

[INA] and that directly contradict the INA" and for that reason

are *ultra vires*, arbitrary, capricious, and not in accordance

with law. Pls.' Mem. P. & A. Mot. Summ. J. ("Pls.' Mot."), ECF

No. 42-3 at 10. Plaintiffs further argue that the denials of the

petitions, to the extent they were based on the challenged

regulations, were arbitrary and capricious. *Id.*

Defendants respond that the regulations allow petitioners

to prove both salaried and non-salaried compensation, or that

they received no compensation at all but provided for their own

support. Defs.' Mem. P. & A. Cross Mot. Summ. J. & Opp'n

("Defs.' Mot. & Opp'n"), ECF No. 43-3 at 23. "Non-salaried

compensation," Defendants explain, allows religious workers who

have taken a vow of poverty to qualify for the visa program by

providing proof that they receive financial support from their

religious organization. *Id.* at 27-28. Defendants argue that

these regulations are not in conflict with the INA, and they reflect USCIS's permissible construction of the statute. *Id*. at 21-31. Defendants also maintain that USCIS's denial of the Brothers' visa petitions was "fully supported by the administrative record and consistent with the limited scope of APA review." *Id*. at 30.

### 1. USCIS's Interpretation of the INA In Its Implementing Regulations Is Permissible

In reviewing an agency's interpretation of a statute Congress has entrusted it to administer, the Court's analysis is governed by *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Under step one of the *Chevron* analysis, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*. at 842-43. In determining whether the statute unambiguously expresses the intent of Congress, the court should use all the "traditional tools of statutory construction," including looking to the text and structure of the statute, as well as its legislative history, if appropriate. *Chevron*, 467 U.S. at 843, n.9. "When the statute is clear, the text controls and no deference is extended to an agency's interpretation in conflict with the text." *Adirondack Med. Ctr. v. Sebelius*, 29 F. Supp. 3d 25, 36 (D.D.C. 2014) (citing *Chase Bank USA, N.A. v. McCoy*, 562

U.S. 195 (2011)). Under step two of the *Chevron* analysis, if Congress "has not directly addressed the precise question" at issue, the agency's interpretation of the statute is entitled to deference so long as it is "reasonable" and not otherwise "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843-44.

### a. *Chevron* Step One

The first step in the *Chevron* analysis is to look at the plain language of the statute. A person applying for "special immigrant" religious worker status must "for at least two years immediately preceding the time of the application . . . ha[ve] been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States." 8 U.S.C. § 1101(a)(27)(C)(i). The person must be seeking to enter the United States "solely for the purpose of carrying on the vocation of a minister of that religious denomination" and must "have been carrying on such vocation, professional work, or other work continuously for at least the 2-year period described [supra]." *Id*. § 1101(a)(27)(C)(ii)-(iii). The statute does not define "carrying on" or "vocation," nor does it set forth a list of criteria for establishing that a special immigrant is coming to the United States "solely for the purpose of carrying on the vocation of minister" or "to work" in a "religious vocation," nor for establishing that he was "carrying on such vocation" for

the two years before he filed his visa petition. *See generally* 8 U.S.C. § 1101(a)(27)(C)(i)-(iii).

USCIS's implementing regulations require, among other things, that the petitioner demonstrate that the beneficiary "has the requisite experience both as a minister and a member of the religious organization during that qualifying period" by providing verifiable evidence that the alien: (1) received salaried compensation; (2) received non-salaried compensation; or (3) that the religious worker received not compensation and provided for his or her own financial support. 8 C.F.R. § 204.5(m)(11)(i)-(iii). The regulations also require that the petitioner demonstrate the beneficiary is coming to the United States to work in a full time "compensated position" by providing verifiable evidence of "how the petitioner intends to compensate the alien . . . which may include salaried or non-salaried compensation." 8 C.F.R. §§ 204.5(m)(2) and (10).

Plaintiffs argue that the regulations violate the APA and are *ultra vires* because the statute does not require that the religious worker be in a compensated position. Pls.' Mot., ECF No. 42-3 at 12; *see also* Pls.' Reply, ECF No. 45 at 5 ("Congress has spoken to the precise question at issue" and has allowed "both compensated and uncompensated work.") Defendant responds—and the Court agrees—that "the regulation does not require evidence of salaried compensation to the exclusion of other

types of compensation or even non-compensatory arrangements the organization may have with a religious worker." Defs.' Mot., ECF No. 43-3 at 27.

The challenged regulations permit petitioners to prove "compensation" with evidence that they received non-salaried compensation, which Defendants interpret to include the type of financial support Plaintiffs contend should be sufficient. Defs.' Mot. & Opp'n, ECF No 43-3 at 23, 27-28. I-360 visa petitioners can establish that a beneficiary carried on a vocation or religious work for the two-year period before applying for the visa with sufficient evidence that the beneficiary "received salaried compensation" or "received non-salaried compensation." 8 C.F.R. § 204.5(m)(11)(i)-(ii). The regulations also permit a petitioner to prove that the beneficiary provided self-support if he received no compensation of any kind. 8 C.F.R. § 204.5(m)(11)(iii). Likewise, an I-360 visa petitioner can establish that the beneficiary is coming to the United States "solely for the purpose of carrying on the vocation of a minister," with evidence relating to compensation that "may include salaried or non-salaried compensation." 8 C.F.R. § 204.5(m)(2), (10). Enumerated examples of such evidence include "budgets showing monies set aside for salaries, leases, etc.; verifiable documentation that room and board will be

provided; and other evidence acceptable to USCIS." 8 C.F.R. § 204.5(m)(10).

For example, in response to Brother Eduardo's I-360 visa petition upon first review, USCIS explained that the support provided to Brother Eduardo as described by Reverend Zak appeared to describe past compensation, but the Salesian Society must provide documentary evidence to substantiate it. Eduardo AR at 89. USCIS never stated that the support that the Salesian Society provided to Brother Eduardo did not satisfy the requirement, they simply said there was insufficient documentation to verify Reverend Zak's representation. *Id.* Later, upon reopening Brother Eduardo's I-360 petition, USCIS explained that evidence of non-salaried compensation sufficient to satisfy the regulations may include but was not limited to: verifiable evidence of financial support, including stipends/allowances and room and board; evidence of medical insurance coverage in the form of insurance cards or insurance payments; documentation of stipends provided in the form of processed checks or paystubs; or "other evidence acceptable to USCIS." Eduardo AR at 23-24.

Plaintiffs rely heavily on *Shalom Pentecostal Church v. Acting Secretary U.S. Department of Homeland Security*, 783 F.3d 156 (3d Cir. 2015), to contend that any requirement that asks a petitioner to prove he carries on a religious vocation with

evidence of the religious organization's payment of salaried or non-salaried compensation is impermissible because it is not written into the statute directly. Pls.' Mot., ECF No. 42-3 at 12-13. But that reliance is misplaced. In *Shalom*, the Court of Appeals for the Third Circuit ("Third Circuit") held that USCIS could not enforce a regulation that required a religious worker to have completed his two years of past religious work "in lawful status" in the United States. *Id.* at 167. In Plaintiffs' view, the *Shalom* court invalidated the "in lawful status" regulatory provisions "because they imposed requirements beyond those stated in § 1101(a)(27)(C) . . . [because] [t]he INA itself made no such requirement of *lawful* work." Pls.' Mot., ECF No. 42-3 at 12-13. Plaintiffs, however, miss important distinctions between this case and *Shalom*. First, USCIS did not argue that the "in lawful status" regulation was an exercise of its authority to establish the type or quantum of evidence necessary to meet the past-work requirement of the statute. *See generally*, *Shalom*, 783 F.3d 156. Second, the "in lawful status" regulation rendered other provisions of the INA related to a special immigrant religious worker's legal immigration status superfluous. *See id.* at 165 ("The Regulation, in effect, would make § 1255(k)(2)'s exemption for unauthorized work meaningless in most circumstances."). Third, when the Third Circuit concluded that absence of "in lawful status" in the statute

itself reflected Congress's intent not to preclude USCIS from making lawful status a requirement by regulation, it did so by relying on precedent that the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has held will not apply to APA claims in this circuit. *See id.* at 166 ("We are unswayed by the line of decisions from the Court of Appeals for the D.C. Circuit declining to apply *Russello* [*v. United States*, 464 U.S. 16, 23 (1983)] in the administrative agency context."). Moreover, as explained *supra*, the regulations do not require that the religious worker be in a compensated position.

"[I]n an administrative setting . . . Congress is presumed to have left to reasonable agency discretion questions that it has not directly resolved." *Cheney R.R. Co. v. ICC*, 902 F.2d 66, 69 (D.C. Cir. 1990). Here, Congress's silence as to how a religious worker would establish that he is "carrying on" his "vocation," and its silence as to whether a religious organization's payment of salaried or non-salaried compensation is relevant to whether the worker carries on his vocation for the organization, does not compel the Court to conclude that Congress intended to preclude USCIS from implementing the challenged regulations. Indeed, the INA authorizes USCIS to promulgate regulations "elaborating on the[] statutory qualifications" for a classification as a special immigrant religious worker. *See Shalom*, 783 F.3d at 160; 8 U.S.C. §

33

1103(a)(3). Plaintiffs' argument that Congress's use of the words "carrying on" and "vocation" demonstrate that it was not silent as to compensation but instead provided a clear expression of intent, *see* Pls.' Opp'n, ECF No. 45 at 6-7; Pls.' Mot., ECF No. 42-3 at 12-13 (claiming Congress chose that language "recognizing that most men and women in vocations take a vow of poverty that precludes compensation"); is unpersuasive because Plaintiffs have provided no legal support for this argument, *see id.*

In construing a different portion of the implementing regulations, those that define "religious occupation," the District Court observed that "[o]n its face the statute does not specifically describe the type or quantum of evidence which must be produced in order for an applicant to qualify as a special immigrant religious worker," noting that the regulations provide a short, non- exhaustive list of examples of religious occupations." *Avena v. I.N.S.*, 989 F. Supp. 1, 5 (D.D.C. 1997). The same reasoning applies to the challenged regulations here. Accordingly, the Court concludes that the challenged regulations survive the first step of the *Chevron* analysis, and they are not *ultra vires*. This result is consistent with decisions from other jurisdictions recognizing USCIS's authority to investigate a religious organization employer's ability to pay a petitioner seeking a special immigrant religious worker visa. *See Madrasah*

*Islamiah, Inc. v. Dep't Homeland Sec.*, Civ. Action No. H-12-3492, 2015 WL 632090 (S.D. Tex. Feb. 13, 2015) (citing *Woody's Oasis v. Rosenberg,* No. 1:13-cv-367, 2014 WL 413503, at *3 (W.D. Mich. Feb. 4, 2014) ("The Court finds this long-standing precedent persuasive, and agrees that the USCIS has the authority to investigate an employer's ability to pay.")).

### b. *Chevron* Step Two

Under *Chevron* step two, the Court will uphold USCIS's interpretation as long as it is a "permissible construction of the statute," *Chevron*, 467 U.S. at 843; and considers "whether the [agency] has reasonably explained how the permissible interpretation it chose is 'rationally related to the goals of' that statute." *Petit v. U.S. Dep't. of Educ.*, 675 F.3d 769, 785 (D.C. Cir. 2012) (citations omitted). The Court will "defer to the [agency's] interpretation if it is reasonable and consistent with the statutory purpose and legislative history." *Bell Atl. Tel. Cos. V. FCC*, 131 F.3d 1044, 1049 (D.C. Cir. 1997).

Defendants explain that USCIS issued the challenged regulations in 2008 to "help eliminate or reduce fraud in the religious worker program." Defs.' Mot., ECF No. 43-3 at 26 (citing 73 Fed. Reg. 72,276-01) (summary of USCIS's rationale for the final rule that became effective in 2008). At the time the rule was enacted, the federal government "had identified many incidents of fraud in the religious worker program," and

"USCIS estimated that as many as one-third of applications and petitions filed for religious worker admission were fraudulent." *Id.* Accordingly, for a petitioner to demonstrate that he or she worked in a religious vocation or occupation before applying for a special immigrant religious worker visa, the comments to the final rule explain that the petitioner could provide verifiable evidence of "past compensation or support to demonstrate the required previous two years of religious work." *Id.* Defendants further emphasize that, as discussed *supra*, while the regulations ask for verifiable evidence of compensation to prove a petitioner has carried on their religious work before coming to the United States, the regulations also accommodate religious workers who could demonstrate that they worked but did not receive a salary. 8 C.F.R. § 204.5(m)(11) (providing for petitioners who received non-salaried compensation, such as room and board, or petitioners who received no salary but provided their own support). Defendants assert that "[a]t no time did the Agency issue any request that could not be met but for the religious workers' vow of poverty." Defs.' Mot., ECF No. 43-3 at 28.

Plaintiffs maintain that the challenged regulations are directly at odds with the INA, for the reasons discussed at the first step of the *Chevron* analysis, and they therefore do not respond to Defendants' arguments at step two of the *Chevron*

36

analysis. *See* Pls.' Opp'n, ECF No. 45 at 6 ("Nothing in the original statutory language needs clarifying. There is, therefore no need to move to the second step of the *Chevron* analysis."). Plaintiffs do dispute Defendants' arguments concerning the need to reduce fraud in the religious worker visa program, describing the concerns about fraud as "vague" and related to "unspecified religious worker filings in the past." Pls.' Mot., ECF No. 42-3 at 26. Plaintiffs also argue that "Defendants' concern about fraud should only permit them to present those concerns to Congress with a request that Congress amend that statutes in order to eliminate or minimize the fraud." Pls.' Opp'n, ECF No. 45 at 10.

However, Congress did direct USCIS to address the incidents of fraud in the religious worker visa program. In 2008, Congress took up legislation to extend the non-minister provisions of the religious worker visa program. *See* Special Immigrant Nonminister Religious Worker Program Act, Pub. L. No. 110-391, 122 Stat. 4193 (2008). The legislative history shows Congress intended USCIS to address their concerns regarding fraud with rule making that would immediately follow passage of the law. *See* 59 Cong. Rec. H2284-H2289 (daily ed. Apr. 15, 2008). The legislation addressed the religious worker program for immigrants in religious vocations or occupations, not immigrants in the vocation of minister. Pub. L. No. 110-391, 122 Stat. 4193

(2008). However, Plaintiffs have not argued that Congress's fraud concerns extended only to non-ministers.

A number of Members of Congress expressed the need for preventing fraud in the program, as religious workers visas were reportedly the visa type with the highest incidents of fraud and were "known as some of the most difficult to adjudicate" to prevent fraud. 59 Cong. Rec. H2287 (daily ed. Apr. 15, 2008) (statement of Sen. King). Members of Congress discussed various reports on this issue, noting for example that in 2004, a Venezuelan national was convicted for visa fraud after "he had filed 179 fraudulent petitions for religious ministers. In addition to creating fraudulent certificates of ordination, diplomas and other supporting documentation, he also obtained a valid 501(c)(3) tax exemption from recognized religious organizations without their knowledge." *Id*. Ultimately, as passed, the Special Immigrant Nonminister Religious Worker Program Act of 2008 extended the non-minister religious worker program but also required the Secretary of Homeland Security to "issue final regulations to eliminate or reduce fraud related to the granting of special immigrant status" for non-minister religious workers. Pub. L. 110-391, 122 Stat. 4193 (2008). Accordingly, Defendants' fraud concerns are anything but vague. Furthermore, it is clear that Congress intended USCIS to revise its regulations to further prevent fraud.

38

Defendants argue—and the Court agrees—that they have "reasonably interpret[ted] the statute as permitting USCIS to require that a petitioner submit evidence of compensation (salaried or non-salaried) or self-support to demonstrate that the beneficiary possesses the requisite experience as a religious worker and member of the religious organization during the qualifying period." Defs.' Reply, ECF No. 47 at 6. The Court also agrees that the regulations "help[] USCIS detect and deter fraud and other abuses in the religious worker program." which is consistent with Congress's directive and rational in view of the agency's study of this issue. *Id.*

Accordingly, USCIS's interpretation of the statute as set forth in the regulations is both "reasonable and consistent with the statutory purpose and legislative history," *Bell Atl. Tel. Cos.*, 131 F.3d at 1049; and Plaintiffs APA challenge to the regulations fail at this stage of the analysis.

### 2. USCIS's Denials of the Brothers' Visa Petitions Were Not Arbitrary or Capricious.

Plaintiffs would still be entitled relief in this matter if USCIS's denials of the Brothers' petitions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. §706(2)(A). To make this determination, the Court considers whether USCIS's decisions were "not supported by substantial evidence" or whether USCIS

39

made a "clear error in judgment." *Doe v. U.S. Citizenship &
Immigration Servs.*, 239 F. Supp. 3d 297, 306 (D.D.C. 2017)
(citations omitted).

Plaintiffs have based their argument on this issue on the
challenged regulations being invalid. *See* Pls.' Mot., ECF No.
42-3 at 14-15. Plaintiffs maintain that USCIS erred in denying
the Brothers' I-360 visa petitions because the Brothers "meet
all of the . . . requirements for a Special Immigrant Religious
worker set out in both the Statute and Regulations" other than
the "*extra* manufactured requirement of showing that they had
been compensated for the last two years and will be compensated
going forward." *Id.* at 15. The Court has already concluded,
however, that 8 C.F.R. §§ 204.5(m)(2) and (11) are not *extra*
manufactured requirements, rather they reflect a permissible
construction of the INA, as they elaborate on the type and
quantum of evidence a petitioner must provide to demonstrate
that they carry on their religious vocation, and they
accommodate both compensated and uncompensated religious
workers. Accordingly, USCIS's reliance on the challenged
regulations to deny an I-360 visa petition is not arbitrary,
capricious, or an abuse of discretion.

The Court finds no error in USCIS's adjudication of the
Brothers' special immigrant religious worker visa petitions. As
Defendants point out, "Plaintiffs failed to respond to the

Agency's requests for evidence and failed to address the evidentiary deficiencies discussed in those requests." Defs.' Mot., ECF No. 43-3 at 28; *see also* Eduardo AR at 2-10; Rubio AR at 2-7; Sasika AR at 2-6. The regulations provide that "[i]f the petitioner or applicant fails to respond to a request for evidence or to a notice of intent to deny by the required date, the benefit request may be summarily denied as abandoned, denied based on the record, or denied for both reasons." 8 C.F.R § 103.2(b)(13)(i).

Plaintiffs failed to respond to the RFE for Brother Eduardo's reopened petition and Brother Rubio's and Brother Sasika's petitions on the grounds that this litigation was pending and "the subsequent RFEs should be treated as a nullity because each was an in artful attempt to deprive the [C]ourt of its jurisdiction." Pls.' Opp'n, ECF No. 45 at 13. Plaintiffs point to no case, and the Court is aware of none, that supports this position. Rather, it is generally understood that an agency may take "voluntary corrective action" after a plaintiff has initiated litigation, and such action may render a plaintiff's claims moot. *See Gibbs v. Brady*, 773 F. Supp. 454, 457 (D.D.C. 1991). It is not uncommon for USCIS to reopen visa petitions while litigation is pending, and when USCIS denies a reopened petition, even if on alternative grounds or in a decision with different or more clear reasoning, courts look to the final

denial when evaluating agency action in an APA claim. *See, e.g.*, *Fogo De Chao (Holdings) Inc. v. U.S. Dep't. Homeland Sec.*, 769 F.3d 1127, 1134 (D.C. Cir. 2014) (evaluating USCIS's final decision on the plaintiff's petition for a temporary visa for foreign employees with specialized knowledge, where USCIS had reopened the petition proceedings while the case was pending).

Moreover, even if USCIS's first denial of Brother Eduardo's I-360 visa petition was operative, the Court would still find no error in the denial. In response to USCIS's first RFE seeking evidence pertaining to compensation, the Salesian Society provided a letter from a Salesian Reverend that claimed a "total amount of $41,767 each year is paid wholly by the Salesian Order on Br[other] Eduardo's behalf," which included annual tuition for his Master's Degree, room and board, personal expenses, and health insurance. Eduardo AR at 113-14. But the Salesian Society provided no "IRS documentation" or "comparable evidence" of those payments, as required by the regulations for evidence of past work. 8 C.F.R. § 204.5(m)(11). USCIS explained this deficiency to the Salesian Society both in the initial denial and on appeal. Eduardo AR at 90; Eduardo AR at 27-29. In view of the Salesian Society's representation that it made a number of payments to Brother Eduardo, the Salesian Society's failure to provide any documentary evidence to support those claims, the plain statement in the regulations requiring documentary

evidence, USCIS's explanation that such evidence is required and a letter from within the religious organization is insufficient, and USCIS's interest in limiting fraud in the religious worker visa program, the Court concludes that even the initial denial of Brother Eduardo's I-360 visa petition was not arbitrary, capricious, or contrary to law. *See U.S. Chamber of Commerce v. SEC*, 412 F.3d 133, 140 (D.C. Cir. 2005) ("[T]he scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency, . . . [and a court considers whether the agency] has examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made.").

For these reasons, USCIS's denials of the Brothers' I-360 petitions were not arbitrary, capricious, or an abuse of discretion.

### B. The Challenged Regulations Do Not Violate the First Amendment or RFRA

Plaintiffs argue that the challenged regulations, as applied to religious workers who have taken a vow of poverty, contravene the Free Exercise and Establishment Clauses of the First Amendment to the United States Constitution as well as RFRA. For the reasons set forth below, the Court concludes that Plaintiffs failed to establish such violations.

43

### 1. The Compensation Requirements Do Not Violate the Free Exercise Clause

The Free Exercise Clause prohibits Congress from enacting laws "respecting an establishment of religion." U.S CONST., amend. I § 1. A plaintiff bringing a free exercise case must "show the coercive effect of the enactment as it operated against him in the practice of his religion." *School Dist. of Abington Tp., Pa. v. Schempp*, 374 U.S. 203, 223 (1963). "[A] burden upon religion exists [when governmental action] put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. Of Indiana Employment Security Div.*, 450 U.S. 707, 718 (1981). "[T]he right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribed (or proscribes).'" *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 879 (1990) (quoting United States v. Lee, 455 U.S. 252, 263, n.3 (1982) (Stevens, J, concurring in judgment).

The Court concludes that Plaintiffs have failed to establish a Free Exercise Clause violation. Plaintiffs object to USCIS's categorization of the support paid on their behalf for living and other expenses as "non-salaried compensation,"

44

asserting that requiring them to provide corroborating evidence that such support is paid on their behalf would cause them to "lie" because, due to their vow of poverty, "*[t]he Salesians do not compensate their ministers.*" Pls.' Opp'n, ECF No. 45 at 11. But Plaintiffs have not explained how USCIS's categorization of the support provided to them as "non-salaried compensation" has "put substantial pressure on [them] to modify [their] behavior and to violate [their] beliefs." *Thomas,* 450 U.S. at 718.[13]

The Supreme Court recently confirmed that it would violate the Free Exercise Clause for the government to interfere in matters of faith and doctrine, and the Free Exercise Clause "protect[s] [religious institution's] autonomy with respect to internal management decisions that are essential to the institution's central mission." *Our Lady of Guadalupe School v. Morrisey-Berru,* 140 S. Ct. 2049, 2060 (2020). Plaintiffs argue that "[t]he manner by which the Salesians organize their budgeting and finance, particularly as it relates to the records they keep, is a matter of their internal church governance. The Salesians determination of how to support their religious workers free from 'compensation' is a matter of its basic exercise of religion." Pls.' Supp., ECF No. 53 at 6. However,

---

[13] Accordingly, the Court need not reach Plaintiffs' arguments as to whether the government has shown a compelling state interest that could be satisfied with less restrictive means. Pls.' Mot., ECF No. 42-3 at 16-19.

Plaintiffs have not shown that categorizing the support paid on their behalf as "unsalaried compensation" and requiring corroborating evidence of the support interferes with "internal management decisions that are essential to the institution's central mission." Plaintiffs have not explained how they need to change any internal management, record keeping, or anything else to provide evidence that corroborates the support they undisputedly provide to the brothers.

The petition submitted on behalf of Brother Eduardo indicates that the Salesian Order pays for the brothers' needs such as housing, food, clothing, medical care, etc. *See* Eduardo AR at 113. In the case of Brother Eduardo, the Order paid an annual amount of $41,767 for these needs, plus his tuition. *Id*. at 113-114. And when Brother Eduardo taught at the Salesian High School in New Rochelle, New York, "[t]he school made a lump sum payment for the teaching activities of all the Salesians. This payment was sent directly to the Salesian community, which would then use it for community needs such as food, housing expenses, health care, and travel." Eduardo AR at 114. All Plaintiffs were asked to provide was evidence corroborating the records already being kept.

**C. The Compensation Requirements Do Not Violate the Establishment Clause.**

The Establishment Clause prohibits the government from, among other things, favoring one religion over another. *See Agostini v. Felton*, 521 U.S. 203, 232 (1997); *Larson v. Valente*, 456 U.S. 228, 246 (1982). Plaintiffs argue that the challenged regulations do just that because the Salesian Society is "impermissibly inhibited from following the dictates of its religion's [v]ow of [p]overty," while "religions that pay their members, ministers and priests" are not impacted. Pls.' Mot., ECF No. 42-3 at 19-22. As explained *supra*, however, religious workers who have taken a vow of poverty are not precluded from classification as a special immigrant religious worker under the INA. The regulations, therefore, do not create the "denominational preference" upon which Plaintiffs' Establishment Clause claims are based. *Id*. As a result, Plaintiffs have not established that Defendants "acted with the purpose of advancing or inhibiting religion," *Agostini*, 521 U.S. at 232; nor have they favored one religion over another, *Larson*, 456 U.S. at 246. Accordingly, the Court concludes that Plaintiffs have failed to establish an Establishment Clause violation.

Plaintiffs have also failed to establish that the challenged regulations violate the Establishment Clause even if they are facially neutral. *See* Pls.' Mot., ECF No. 42-3 at 22.

Plaintiffs once again contend that the challenged regulations "exclude[e] the Plaintiffs as a Catholic order and participants therein solely because of their faith's Vow of Poverty and denying them all the benefit of immigration law and rights as a result." Pls.' Mot., ECF No. 42-3 at 24 (citing *Everson v. Board of Educ. Of Ewing Twp.*, 330 U.S. 1, 16 (1947)). However, as explained *supra*, this is not the case. Plaintiffs need not "violate a cardinal principal of [their] religious faith," Pls.' Mot., ECF No. 42-3 at 24, to obtain a special immigrant religious worker visa.

### D. The Compensation Requirements Do Not Violate RFRA

RFRA, like the Free Exercise Clause, protects religious exercise. "Congress enacted RFRA in order to provide greater protection for religious exercise than is available under the First Amendment." *Holt v. Hobbs*, 574 U.S. 352, 357 (2015) (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 694 (2014)). To that end, RFRA provides that "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." § 2000bb-1(a). If the government—which is defined by RFRA to include any "department" or "agency" of the United States, *see* § 2000bb-2(1)—substantially burdens a person's exercise of religion, RFRA provides that the person is entitled to an exemption from the rule unless the government "demonstrates that the burden to the

person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." § 2000bb-1(b).

Plaintiffs argue that no religious order whose members profess a vow of poverty "will be able to work legally in or immigrate to the United States" because "no member will be compensated directly or indirectly, [and] it follows that USCIS will always deny the Petition of any religious order that includes a [v]ow of [p]overty as its religious praxis." Pls.' Mot., ECF No. 42-3 at 24-25. This, they contend, is a substantial burden of the exercise of religion for any religious person who has taken a vow of poverty and seeks entry into the United States as a special immigrant religious worker. *Id.* They also suggest that even though they already provide the type of support that would satisfy the challenged regulations, providing documentation of that support to USCIS in response to a request for evidence of "non-salaried compensation" is a burden on their exercise of religion because to do so would be a "lie." *See* Pls.' Reply, ECF No. 46 at 46; Pls.' Supp., ECF No. 53.

As discussed *supra*, Plaintiffs have not established that the challenged regulations place a burden on the exercise of their religion, let alone a substantial one. Plaintiffs claim that "no member [of the Salesian Society who has taken a vow of poverty] will be compensated directly or indirectly," and thus

they will never be eligible for a special immigrant religious worker visa as long as the regulations requiring proof of salaried or non-salaried compensation remain in place and unmodified. Pls.' Mot., ECF No. 42-3 at 24-25. Plaintiffs financially support their Brothers by covering their "needs for housing, food, clothing, travel, medical care," living expenses, and even tuition for religious studies. Eduardo AR at 113-14. Defendants have made clear, both in this litigation and to Plaintiffs during the course of the adjudication of the Brothers' I-360 visa petitions, that it categorizes this type of support as "non-salaried compensation." *See* Defs.' Mot., ECF No. 43-3 at 2, 4, 19-21, 26-28; Defs.' Reply, ECF No. 47 at 1-4; Eduardo AR at 23-24; Rubio AR at 15-16; Sasika AR at 15. Plaintiffs do not need to change any practice to qualify for a visa. Accordingly, there is no deprivation of a government benefit that Plaintiffs allege as the substantial burden they face—that "USCIS will always deny the Petition of any religious order that includes a Vow of Poverty as its religious praxis." Pls.' Mot., ECF No. 42-3 at 24-25.

The Court is unpersuaded by Plaintiffs' insistence that giving USCIS any documentation of the financial support they provide to their Brothers would constitute a burden on the exercise of their practice of maintaining a vow of poverty because it requires them to "tell a lie that they provide the

support under the heading of 'non-salaried compensation.'" *See* Pls.' Reply, ECF No. 46 at 46. The Court appreciates that Plaintiffs do not consider this financial support to be "compensation" of any kind. But what matters for the purpose of a RFRA violation is that despite this semantic disagreement, Plaintiffs are eligible for special immigrant religious worker visas without requiring a modification to their religious practice. *See Kaemmerling v. Lappin*, 553 F.3d 669, 679 (D.C. Cir. 2008) (finding no RFRA violation where the government action "does not call for [the plaintiff] to modify his religious behavior in any way—it involves no action or forbearance on his part, nor does it otherwise interfere with any religious act in which he engages").

In this regard, this case is not unlike *Kaemmerling*, where the D.C. Circuit held that the plaintiffs had not stated a claim for relief under RFRA. *Id.* at 686.  In *Kaemmerling*, the Plaintiff alleged that the Federal Bureau of Prison's extraction and storage of his DNA information substantially burdened his religious beliefs concerning the appropriate use of the "building blocks of life." *Id.* at 678-79. The court emphasized that the "extraction and storage of DNA information are entirely activities of the FBI, in which Kaemmerling plays no role and which occur after the BOP has taken his fluid or tissue sample (to which he does not object)." *Id.* at 679. Where challenged

action "does not call for [the individual] to modify his religious behavior in any way—it involves no action or forbearance on his part, nor does it otherwise interfere with any religious act in which he engages, . . . [the government's actions] cannot be said to hamper his religious exercise because they do not 'pressure [him] to modify his behavior and to violate his beliefs.'" *Id.* (citing *Thomas*, 450 U.S. at 718).

Similarly, here the government's categorization of the type of financial support the Salesian Society provides to the Brothers does not call for the Brothers to modify their religious practice, including their vow of poverty, nor does it call for the Salesian Society to modify their practice of providing support for the Brothers who live out their vow of poverty. The financial relationship between the Salesian Society and their Brothers who have taken a vow of poverty may remain as it is, and Plaintiffs can meet the "compensation" requirements and be eligible for special immigrant religious worker visas.

Even if the act of providing documentation to USCIS under the "heading" of "non-salaried compensation" were a burden on their exercise of religion, *see* Pls.' Reply, ECF No. 46 at 46; it is not a substantial one. Plaintiffs assert that they "have a sincere religious belief that providing evidence of compensation would force them to violate their vow of poverty, which is a basic tenet of their Catholic Order," Pls.' Supp., ECF No. 53;

and courts defer to a RFRA claimant's statement of its own beliefs, so long as that belief is sincerely held, *see Hobby Lobby*, 573 U.S. at 134 ("[I]t is not for [courts] to say that [a person's] religious beliefs are mistaken or insubstantial."). Nonetheless, it is well established that only substantial burdens on the exercise of religion fall within the scope of RFRA, *Henderson v. Kennedy*, 253 F.3d 12, 17 (D.C. Cir. 2001); and it is up to courts to determine, as a matter of law, whether a challenged law or regulation "substantially" burdens a claimant's religious exercise*, see Mahoney v. Doe*, 642 F.3d 1112, 1121 (D.C. Cir. 2011).

To determine whether the challenged regulations place a "substantial burden" on Plaintiffs' religious exercise, we ask whether the challenged regulations put "substantial pressure" on Plaintiffs to "modify [their] behavior and to violate [their] beliefs." *Kaemmerling*, 553 F.3d at 678 (quoting *Thomas*, 450 U.S. at 718). The Court concludes that they do not. This case is unlike those cited by Plaintiffs where the challenged law or regulation placed significant pressure on people to take an action that contravened the core of their religious beliefs and practices. *See Sherbert v. Verner*, 374 U.S. 398, 404 (1963) (state statute forced a Sabbatarian to choose between forfeiting unemployment benefits on the one hand and accepting work on the Sabbath, which would be an abandonment of one of the precepts of

her religion, on the other hand); *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972) (state law compelling Amish parents to send their children to high school compelled the Amish to "perform acts undeniably at odds with fundamental tenets of their religious beliefs"); *Hobby Lobby*, 573 U.S. at 726 (company's cost of acting in accordance with their religious beliefs by not providing insurance coverage for contraceptive methods by as much as $475 million per year). Here, the Brothers need not abandon their vow of poverty to be eligible for a special immigrant religious worker visa. The Salesian Society need only provide documents that support what they have already indicated is their practice: providing support to Brothers who have taken a vow of poverty, such as through payment of housing, food, tuition, health insurance, and other needs.

For these reasons, the Court also rejects Plaintiffs' RFRA claims.

## V. Conclusion

Accordingly, for the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment. An appropriate order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:   **Emmet G. Sullivan**
          **United States District Judge**
          **September 22, 2021**

54